# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF BERKSHIRE, SEPTEMBER TERM .8?? AT LENOX.

##### PRESENT:

HON. ISAAC PARKER, CHIEF JUSTICE,
HON. SAMUEL PUTNAM, ⎫
HON. SAMUEL S. WILDE, ⎬ JUSTICES.
HON. MARCUS MORTON, ⎭

---

## PRENTICE COMSTOCK *versus* MATTHEW VAN DEUSEN *et al.*

Under a grant of a right of way *across* the plaintiff's lot of land, the grantee has not a right *to* enter at one place, go partly across, and then come out at another place on the same side of the lot; and parol evidence to show that such was the intention of the grant is inadmissible.

*Held* also, that dragging timber from the grantee's wood lot upon the plaintiff's land, for the purpose of turning it round, was a misuser of the right of way.

THIS was trespass *quare clausum fregit*. The defendants pleaded a right of way, and the plaintiff replied that the trespass was committed *extra viam*, and with unnecessary damage. The case was referred to H. Hubbard, who made a report of the facts.

Matthew Van Deusen owned two adjoining lots, numbered 14 and 15, parallel to two adjoining lots, numbered 16 and 17, belonging to the plaintiff, the lot No. 15 being bounded on the north by the lot No. 16. On Matthew's lots, near the east end of them, was a steep hill. In drawing timber from

the part of his land east of the hill to that lying west of the
nill, he went on the southerly half of the plaintiff's lot No. 16, that being the most convenient route. At the east end of this route the defendants drew out timber for the purpose of turning it round, it not being convenient to do it on Matthew's own land, occupying in this operation six or seven rods in width of the plaintiff's land. These were the trespasses complained of.

Matthew, to establish his claim to a right of way in the route which he took, exhibited a deed from Isaac Van Deusen (grandfather) to his son Abraham, from whom the plaintiff's title to the south half of lot No. 16 was derived, dated December 5, 1787, conveying that south half, but " reserving the privilege of a road to cross lot No. 16 above mentioned, to my son Isaac, his heirs and assigns, in a place which shall be most convenient." Also a deed of the same date from the same grantor to his son Isaac, of lot No. 14 and part of No. 15, containing this clause : — " Also I hereby grant a road to the two last described lots (No. 14 and No. 15) across lot No. 16, which I have by deed of equal date granted to my son Abraham." Also a deed of release from three of the heirs of Isaac (the son) to the defendant Matthew, the only other heir, dated in 1818, of all their right to the residue of lot No. 15.

A road was opened as early as 1776, but which was not established as a public road until 1791, crossing the several lots mentioned in a direction north and south, westward of the place where the supposed trespass was done. Another road, beginning at the one just described, passed by a mill in lot No. 17 and along the north side of lot No. 16 to the east end of the lot. Matthew had formerly crossed the plaintiff's meadow several times, entering near the west end of the trespass route and coming into the mill road, and then pursuing that road to the east end of his land. When the mill pond has been so high as to render a lane on his own land impassable, he has gone up the public road and into the mill road, and turned thence and passed over the plaintiff's land to his own west of the hill. He has moreover, with others, used

Comstock
*v.*
Van Deu-
sen.

a sled path, in winter, crossing the plaintiff's land west o the public road.

To prove that the grant and reservation in the two deeds from Isaac Van Deusen did not relate to the way afterwards established as a public road, the defendants proved that these deeds were a part of the division and settlement of the grantor's estate among his children. Abraham was desirous of obtaining the south half of lot No. 16 for a sugar orchard, and Isaac (the son) was willing to take lots No. 14 and No. 15, if he could have a right of way to the east end thereof; for without such right, he said he should be excluded from enjoying that part of his land, as it was deemed impracticable to make a road over the hill for loaded teams; that the object of the grant and reservation was not to get to lots No. 14 and No. 15 by the road since made a public road, but to get to the east end of the lots; and that the matter was talked over by the father and sons before the deeds were executed This proof was objected to by the plaintiff.

The questions arising out of the facts were : — 1. Where was the road granted to Isaac to be located : — 2. Had the defendant Matthew, by traversing the plaintiff's land in other directions and places, precluded himself from claiming a right of way in the route complained of : — and 3. If he had such a right, did he exercise it in a lawful manner.

*Sept. term,*
*1826.*

*Dwight* and *Whiting*, for the defendants, insisted that the word *across* was used in Isaac Van Deusen's deeds as synonymous with *over* or *through*, and did not mean directly across from one side of the lot to the other ; — that parol evidence of the conversation at the time of making the deeds was admissible to explain them, on the ground of a latent ambiguity arising from there being more than one place convenient for the way ; *Storer* v. *Freeman*, 6 Mass. R. 435 ; *Leland* v. *Stone*, 10 Mass. R. 459 ; *Fowle* v. *Bigelow*, ibid. 379 ; — that a nonuser of a way reserved, for any period less than forty years, would not be a forfeiture of the right ; *White* v. *Crawford*, 10 Mass. R. 183 ; — and that although a way may be located by user, and then it cannot be changed by the owner of the easement (*Wynkoop* v. *Burger*, 12 Johns. R. 222,) yet here the way reserved had never before been located, and

the party to whom it was reserved had a right to make the location.

*Jarvis* and *Jones*, *contrà*, cited in regard to the unnecessary damage, *Taylor* v. *Whitehead*, 2 Doug. 745 ; *Senhouse* v. *Christian*, 1 T. R. 560 ; and as to the admissibility of the parol evidence, *Dwight* v. *Pomeroy*, 17 Mass. R. 328 ; *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. R. 282. They contended that there had been a location of the way in the place which was afterwards made a highway, and the defendant could not alter that location ; 12 Johns. R. 222 ; — and that a nonuser for more than twenty years was a forfeiture of a right of way. *St.* 1783, *c.* 13, § 4 ; *Hoffman* v. *Savage*, 15 Mass. R. 132 ; *Campbell* v. *Wilson*, 3 East, 301 ; *Holcroft* v. *Heel*, 1 Bos. & Pul. 403 ; *Hill* v. *Crosby*, 2 Pick. 467.

Wilde J. delivered the opinion of the Court. The right of way set up by the defendants depends on the construction of the deeds from Isaac Van Deusen to his sons Abraham and Isaac ; it being very clear that the parol evidence reported by the referee cannot be admitted to explain the intention of the parties, or the terms of the deeds. If a deed be defective, or ambiguous on the face of it, it may be void for uncertainty, but the defect cannot be supplied, or the ambiguity removed, by parol evidence. Facts and circumstances, existing at the time of a conveyance, may become important, and may be proved by parol evidence, as was decided in the case of *Leland* v. *Stone*, 10 Mass. R. 459 ; but the evidence now offered goes to show the agreement of the parties, and the intention of the grant to Isaac Van Deusen, as to the location of the way ; which is clearly inadmissible.[1]

The parol evidence as to the agreement being excluded, there is nothing to support the defendant's construction of the deeds in question. The way granted is to cross the plaintiff's lot ; and the words of the grant are to be understood

Comstock
*v.*
Van Deusen.

166

*May term*
1827

---

[1] But if the words in a deed creating or reserving a right of way be ambiguous as to the extent of the right, the acts and usage of the parties are admissible in evidence to explain the language of the deed. *Choate* v. *Burnham*, 7 Pick. 274.

Comstock
*v.*
Van Deusen.

according to their common meaning, unless it appears that the parties intended to use them in a different sense. The way claimed by the defendants is not *across* the plaintiff's lot, according to the usual acceptation of the word ; and it cannot be presumed from the facts and circumstances reported, that it was otherwise understood by the parties.

The language of the deed is not definite, but according to its most obvious meaning, the object seems to have been to secure to the grantee access to the public highway The lots conveyed to him did not adjoin the public highway ; and although there was a way used, it was only a way by sufferance, which might be legally stopped up at any time.

This construction is strengthened by the subsequent acts of the grantee and his assigns. The case shows that there has been either a location of the way at another place, or a nonuser for nearly forty years, which raises a violent presumption against the present claim.[1]

We are also of the opinion, that the defence must fail for another reason. It appears by the report of the referee, that the defendants drew their timber on the plaintiff's land "for the purpose of turning it around, it not being convenient to do it on the defendant Matthew's land." This was a misuser of the right of way, and could not be justified.

We have, however, no doubt of the plaintiff's right to recover on the ground first stated.

*Judgment for the plaintiff.*

---

[1] See 3 Kent's Comm. (3d ed.) 448, 449; Per *Abbott* C. J. in *Doe* v. *Hilder*, 2 Barn. & Ald. 791 ; Per *Littledale* J., in *Littleton* v. *Cross*, 3 Barn. & Cressw. 339; *Wright* v. *Freeman*, 5 Harr. & Johns. 477; *Hoffman* v. *Savage*, 15 Mass. R. 130; *Emerson* v. *Wiley*, 10 Pick. 310; Jenk. 12; 2 Inst. 353; Yelv. (Metcalf's ed.) 142, n. 1; *Thomas* v. *Sorrell*, Vaugh 341 ; *Bearskee* v. *French*, 7 Connect. R. 125 ; *Commissioners* v. *Taylor*, 2 Bay 262 But see *White* v. *Crawford*, 10 Mass. R. 183